DODGE v. FRANK WATERHOUSE & CO., Inc., et al.

(Circuit Court, W. D. Washington, N. D. May 14, 1907.)

No. 1,290.

1. TRUSTS—CONTRACTS CREATING—VIOLATION OF DUTY BY TRUSTEE.

Complainant and defendant were both creditors of a steamship company, the defendant for a part of the purchase price of a steamship which it had contracted to sell to the company. The latter had loaded the vessel at Seattle for a voyage to Nome, but defendant refused to allow her to proceed until the indebtedness was adjusted. At a meeting at which all three parties were represented, the company by its president, a written agreement was made between complainant and defendant by which the latter agreed to take a mortgage on the vessel securing both claims, acting as trustee for complainant. At the same time the president of the company executed a note in its name to defendant as trustee for the amount of complainant's claim, and also an agreement to deposit one-half the amount to defendant's credit at Nome from the earnings of the voyage, to be applied on such note. He also signed the mortgage, and the vessel was delivered into the company's possession. The other officers

of the company in New York having refused to execute the mortgage, defendant, without complainant's knowledge, entered into an arrangement with the company by which they undertook to cancel the sale, and defendant executed a release to the company of all demands and claims including the freight money which was to be deposited for complainant's benefit. The vessel was of sufficient value to pay all claims against it. *Held*, that the instruments executed at the meeting constituted a single contract to which all three were parties, and which, by virtue of the delivery of the vessel thereunder and its acceptance and use by the company, made a completed sale and rendered the mortgage and the note and collateral agreement binding obligations in favor of complainant, that by discharging and releasing the same defendant became liable to complainant for the full amount of his debt.

2. SAME—EQUITY—NECESSARY PARTIES.

To a suit in equity by complainant to recover his debt from defendant as trustee, the steamship company was not a necessary nor proper party, having been discharged by the release from any liability over to defendant.

In Equity.

Geo. H. King, for complainant.
W. H. Bogle, for respondents.

HANFORD, District Judge. I am unable to find in the pleadings and evidence in this case any legal or equitable grounds for holding the defendant Frank Waterhouse as an individual liable to the complainant, and I therefore direct that as to him the case be dismissed, with costs.

The other defendant, Frank Waterhouse & Co., Incorporated, will hereafter be referred to as the defendant, as if it were the sole defendant in the case. It was formerly the owner of the steamship Garonne, and in the year 1904 it contracted to sell said steamship to the North Alaska Steamship Company, another corporation, which appears to have been organized without any capital other than the hopes of its promoters. In the month of June, 1904, the purchaser owed the defendant $37,671.46 on account of the purchase price for the steamer, and owed the complainant $10,000 for borrowed money, and also other creditors a considerable amount for repairs and betterments made to the steamer and supplies for an intended voyage from Seattle to Nome.

On June 2, 1904, in order to arrange for the payment of the steamship company's debts to the defendant and to the complainant, and to clear the ship so she could proceed immediately on her intended voyage, the three parties, represented respectively by Frank S. Pusey, agent for the complainant, Frank Waterhouse, president of the defendant, and Charles B. Smith, president of the steamship company, held a conference at Seattle, which culminated in the execution and delivery of a memorandum agreement, a promissory note, and an assignment of freight money, which several documents are of the following tenor:

"Memorandum between Frank S. Pusey, Agent for G. M. Dodge, of New York, and Frank Waterhouse & Co., Inc., of Seattle, Washington.

"The North Alaska Steamship Company is indebted to said Waterhouse & Co., Inc., in the sum of about $37,671.46 being balance due on purchase price of the steamship Garonne, and are also indebted to said G. M. Dodge in the sum of about ten thousand dollars for borrowed money.

"It is agreed that said Waterhouse & Co., Inc., shall take a mortgage from said North Alaska Steamship Co. upon the steamship Garonne to secure both claims above mentioned. The claim of said Waterhouse & Co., Inc., shall be prior and paramount under such mortgage, and the claim of said Dodge shall be secondary. Said Waterhouse & Co., Inc., shall take a note from said North Alaska Steamship Co. payable to them as trustee, for the amount so owing to said Dodge, said note to be payable in two months from date.

"It is agreed that said Waterhouse & Co., Inc., in acting as such trustee for said Dodge in the securing of said indebtedness, assumes no liability whatever with reference thereto, except that it agrees to act in good faith.

"Frank S. Pusey,
"Agent for G. M. Dodge.
"Frank Waterhouse & Co., Inc.,
"By Frank Waterhouse, President."

"$10.000.00. Seattle, Wash., June 2nd, 1904.

"On or before two months after date we promise to pay to the order of Frank Waterhouse & Co., Inc., as trustee the sum of ten thousand and $^{00}/_{100}$ dollars, with interest at the rate of seven per cent. per annum from date, negotiable and payable at the Seattle National Bank, Seattle, Wash. If suit is brought on this note or it becomes advisable to place the same in the hands of an attorney for collection, we agree to pay an additional sum equal to five per cent., upon the amount of this note as an attorney's fee.

"North-Alaska Steamship Co.,
"By Charles B. Smith, President."

"Seattle, Washington, June 2nd, 1904.

"I do hereby agree to hold out and deposit five thousand dollars ($5,000.00) of the freight money collected from first voyage of S. S. Garonne upon its arrival at Nome, Alaska, with the Bank of Nome to the credit of Seattle Nat'l Bank for use of Frank Waterhouse & Co., Inc., trustee.

"Charles B. Smith."

A mortgage of the steamship Garonne was also prepared and signed by Smith, as president of the steamship company, containing stipulations in conformity with the above memorandum, and upon these several documents this suit is founded.

The following quotations from the defendant's answer are proximately a true statement of the transaction and the controlling circumstances which influenced the parties:

"That on June 2, 1904, there was a balance due respondent company on said purchase price from said North Alaska Steamship Company of $37,671.46. That said steamer was loaded with cargo and passengers ready to start on her voyage to Nome, Alaska. That the representative of said North Alaska Steamship Company reported to respondent company that there were claims unpaid against said steamer for repairs and supplies amounting to approximately thirteen thousand dollars ($13,000.00). That said North Alaska Steamship Company had failed to furnish a guarantee bond guaranteeing said vessel would be kept free of liens, and they had failed to furnish the collateral security for said deferred payments according to the terms of their contract, and stated to respondent that they were unable to furnish such security; and respondent company had notified them that said vessel would not be permitted to sail under their charge until said contract was complied with in full. That on or about June 1, 1904, one Charles B. Smith, president of said North Alaska Steamship Company, arrived in Seattle from New York expecting to go to Nome, Alaska, on said steamer, and one Frank S. Pusey, representing himself as the agent of said complainant, also arrived in Seattle about the same date. That said Smith represented to respondents that his company was prepared to pay off all of the claims against said vessel incurred by repairs and supplies as soon as he could notify the New York office of the amount due therefor, and that they were prepared to pay the balance due respondent company on the purchase price within the next 20 days, and in view of said representa-

tions, and relying thereon, this respondent company consented to permit said steamer to make said voyage in charge of said North Alaska Steamship Company. That said Smith and said Pusey agreed that said North Alaska Steamship Company was indebted to said complainant, in the sum of ten thousand dollars ($10,000.00), and said Smith, on behalf of his said company, offered to take a bill of sale to said steamer and to execute a mortgage thereon for the balance due respondent company, payable in twenty (20) and forty (40) days from that date, and to give a second mortgage to said complainant to secure the ten thousand dollars ($10,000.00) due him payable in sixty (60) days from that date; said bill of sale and mortgages to be executed by said company as soon as the money was received by respondent company with which to pay the claims for labor and supplies against said steamer. That said Smith also agreed with said Pusey to assign to him, and on behalf of said North Alaska Steamship Company did assign to said Pusey, certain freight due on cargo then being shipped by said steamer to Nome, which was payable on delivery of the cargo at Nome, and said Pusey appointed said Smith as agent to collect said freights and remit them to the Seattle National Bank for the credit of said complainant. That as a matter of convenience it was agreed between the said Pusey and the said respondent company that one mortgage would be taken on said vessel securing both claims due said respondent company and due said complainant; said mortgage providing for priority in favor of the debt due respondent company. That said Pusey stated to respondents that he did not wish to remain in Seattle for the length of time necessary to get said mortgage executed by said North Alaska Steamship Company, and requested respondent company to act for him in receiving such money as might be remitted by said Smith to said Seattle National Bank for the credit of complainant, and in the acceptance and recording of said mortgage; and the respondent company as a matter of accommodation to said Pusey, consented to do so, and the memorandum set forth in the sixth paragraph of said bill of complaint was executed to evidence said arrangement.

"Respondent further shows that it was agreed that the note to said complainant should be executed by said North Alaska Steamship Company payable to this respondent company as trustee for said complainant in order that the same might be deposited in the Seattle National Bank, and any remittances received by said bank from said Smith could be credited thereon. * * * *

"Respondent states that in the transactions and conversations with said Pusey leading up to said final arrangement the said Pusey was distinctly informed of the rights of this respondent and the conditions as they existed at that time between it and said North Alaska Steamship Company. * * * Respondents state that said North Alaska Steamship Company was a New York corporation, and had its main office and corporate seal in the state of New York, and that all of its officers except the said Charles B. Smith, who was president, were then in New York. That respondent company caused to be prepared a bill of sale of said steamer from respondent company to said North Alaska Steamship Company, and also caused to be prepared a mortgage from said North Alaska Steamship Company to respondent company upon said steamer with appropriate conditions and provisions to secure the debt due this respondent company, and also that due complainant in accordance with the terms agreed on. That said mortgage was submitted to said Pusey and declared by him to be satisfactory in form. That thereupon respondent company procured said Charles B. Smith, president of said North Alaska Steamship Company, to sign said mortgage for and on behalf of said company, and also to execute the notes upon behalf of said company. * * * That accordingly this respondent company on June 3, 1904, inclosed said bill of sale and said mortgage to the Chase National Bank of New York with directions to said bank to deliver said bill of sale to said North Alaska Steamship Company upon the proper execution of said mortgage by that company, and on the same day respondent company notified J. B. Leake, the secretary of said company, and also the Occidental Security Company, the financial agent of said company in New York, of the forwarding of said papers and requested prompt execution thereof. That said North Alaska Steamship Company failed and refused to execute said mortgage and refused to pay the claims incurred by it against said steamship company for repairs and supplies. * * * Re-

spondents state in answer to the allegations contained in the ninth paragraph of said bill of complaint that said steamship Garonne on June 2, 1904, was in first-class condition, and respondent believes that she was thoroughly seaworthy, and they state that the overhauling and repairs made thereon by said North Alaska Steamship Company were charged and done on the credit of this steamer."

The North Alaska Steamship Company having failed to meet its obligations for repairs, etc., the defendant corporation, disregarding the arrangement made at Seattle with the complainant's representative, served a written notice upon the officers of the North Alaska Steamship Company in New York, which reads as follows:

"New York, July 8th, 1904.

"North Alaska Steamship Company—Gentlemen: By the terms of our conditional contract of sale of the steamship Garonne to you it was provided that deferred payments should be evidenced by notes of your company and secured by a first mortgage on the steamer and by such additional collateral security as should be satisfactory to us. It was also further provided that your company should give us a guaranty company's bond, protecting us and the steamer from any lien or claims for supplies or repairs that might be incurred by you at any time before the payment of our debt in full. It was also provided in said agreement that these securities and bonds were to be furnished to us on or before the 10th day of March, 1904. None of these conditions have been complied with by you. There is now a balance due us of $37,641.00, with interest since June 2, 1904, and there are claims and demands outstanding against the steamer, incurred by you in the purchase of supplies and material and for repairs, amounting to something over $30,000.00, which are unpaid and for which the holders claim a lien against the steamer. We now notify you that unless you are prepared to and will at once complete the performance of your contract by accepting title to the steamer, executing a mortgage and notes for the deferred payments, furnish the bond from the guaranty company, indemnifying us against any claims against the steamer, and furnish the additional collateral security for preferred payments due us, that security to be to our satisfaction, we will exercise the right reserved to us under the contract of canceling your option of purchasing the said steamer and declare a forfeiture of any rights you would otherwise have in said contract, and also will retain the payments heretofore made to us thereon. We are now and have been since the tenth day of March, last, ready and prepared to execute a bill of sale to you of the steamer upon your compliance with the terms of said contract, but we are not willing to allow the matter to stand open in its present shape, and we require that you either perform the contract or submit to a forfeiture of your rights under it at once.

"Yours truly, Frank Waterhouse & Co."

The response was a notice that said steamship company was unable to comply with the terms of said demand, and that it abandoned the contract to purchase the steamship, and thereupon the president of the defendant corporation entered into the following written contract with Wm. F. King, who had been a financial backer of the steamship company:

"Memorandum of Agreement made this 9th day of July, 1904, between Wm. F. King, of New York City, Party of the First Part, and Frank Waterhouse, of Seattle, Washington, Party of the Second Part.

"For and in consideration of the mutual covenants and agreements hereinafter expressed the said parties mutually agree as follows:

"First. The said Wm. F. King acting for both parties, will at once organize a corporation under the laws of the state of New York, to be known as the Merchants' and Miners' Steamship Company of New York, with a capital stock of one hundred thousand dollars ($100,000.00), such corporation to have all the powers usual and common to transportation companies. The board of

directors shall be composed of five members and the board for the first year shall consist of the following persons: William F. King, Wm. R. Corwine and S. Cristy Mead, of the city of New York, and Frank Waterhouse and W. H. Bogle, of the city of Seattle. For the first year the president shall be Frank Waterhouse, the vice president W. H. Bogle and the secretary S. C. Mead. The said Wm. F. King is to receive fifty thousand dollars par value of the capital stock and, the said Frank Waterhouse is to receive the other fifty thousand dollars par value of the capital stock.

"Second. Upon the formation of said corporation, said Waterhouse will have Frank Waterhouse & Co., Inc., execute a bill of sale conveying to said new company the steamship Garonne with her equipment, supplies and material on board and also turn into the treasury of said company, the cash in the hands of Frank Waterhouse & Co., Inc., received from the last voyage of the Garonne.

"Third. The said Wm. F. King will advance to said new company the sum of thirty thousand dollars ($30,000.00), in cash, to be applied in the payment and discharge of the claims now existing against the steamship for supplies, material, repairs, etc., said money to be deposited by said King in the Chase National Bank, New York, to the credit of Frank Waterhouse, fifteen thousand dollars ($15,000.00) thereof, on or before July 16th, 1904, and the remaining fifteen thousand dollars ($15,000.00) on or before July 23d, 1904.

"Fourth. Said new company shall execute a mortgage securing to said Wm. F. King the said sum of thirty thousand dollars ($30,000.00) and to said Frank Waterhouse & Co., Inc., the sum of thirty-seven thousand dollars, with interest on said amounts from July 15th, 1904. Said mortgage to contain the usual covenants and agreements contained in such instruments, but to provide specificaly against any personal liability or stock liability of either of the parties hereto for any part of the indebtedness expressed in said mortgage. Said indebtedness to be represented by notes given by said mortgagor company to said respective parties as above, and each of the notes to be of equal rank under the mortgage, and to be payable at such time or times as said parties hereto may hereafter agree, and to bear interest at the rate of 6 per cent. per annum.

"Fifth. Said Waterhouse shall advance to said new company such amount as may be needed for the operation of the steamer during the present season.

"Executed in duplicate the date above named.

"Wm. F. King.
"Frank Waterhouse."

The scheme outlined in this agreement was subsequently carried through to completion, and on the same day that said agreement was entered into the defendant executed a release to the North Alaska Steamship Company forever discharging it "of all and from all, and all manner of action and actions, cause and causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expense, executions, claims or demands whatsoever in law or in equity, which against the North Alaska Steamship Company, its successors and assigns, ever had, now has or which its successors and assigns hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents." A similar release was given to the defendant by the steamship company, and the defendant also agreed to relinquish the freight money assigned by Smith, the president of the steamship company, to the defendant as trustee for the complainant. The exchange of releases and relinquishment are proved by the testimony of Mr. Bogle, given in behalf of the defendant, and by a copy of the release executed by

the defendant, which was introduced in connection with his testimony as defendant's "Exhibit Q3."

These transactions were carried through to completion at the city of New York without any notice being given to the complainant. In its answer and in the evidence introduced in behalf of the defendant there is an attempt to excuse its failure of duty in this regard on the ground that its officers did not know the address or whereabouts of the complainant. From the testimony of Waterhouse and Bogle it appears that the only efforts made to communicate with the complainant were confined to inquiries directed to persons connected with the steamship company, whose interests would not have been advanced by affording him a fair opportunity to see to the enforcement of his rights in connection with the adjustment made between the two corporations. This shows inexcusable negligence on the part of a trustee. The evidence proves that the complainant is, and has been for many years, a man of national reputation, and at the time of the transactions he had an office in New York City, which he visited frequently, and when absent therefrom he was but a short distance from New York City, and was in constant communication with his office. I have no doubt that any 10-year old boy of ordinary intelligence, if dispatched with a message, could have readily delivered it to the complainant in person, and that Mr. Frank Waterhouse, if he had made a bona fide effort to do so, could have communicated with the complainant by mail, telegraph, or telephone, or personally.

It is the contention of the complainant that the steamship Garonne in the year 1904 was of sufficient value to constitute ample security for the entire indebtedness of the North Alaska Steamship Company, including the unpaid purchase money, the debts contracted for repairs, improvements and supplies, and the debt due to him, and that the disposition made of the ship without collecting said debt constitutes a breach of trust rendering the defendant corporation liable to him for the entire amount of said debt. The defense appears to rest upon a theory that the North Alaska Steamship Company acquired no interest in the ship other than an option to purchase, and that the defendant corporation incurred no liability to the complainant except to hand over any amount of money which might be voluntarily paid by the steamship company under the contract of June 2, 1904. In this it is assumed that the steamship company was not a party to that contract and was not obligated to mortgage the steamship to secure the money due to the complainant. I hold, however, that the mortgage which was signed by the president of the steamship company, the promissory note for $10,000, given to the defendant as trustee for the complainant, the assignment of freight money, and the contract signed by the defendant and Pusey as agent for the complainant, constitute one contract, binding upon all three of the parties. The documentary evidence in the case proves that notice of the transaction was promptly sent to the secretary of the steamship company in New York, and that Smith's authority as president of the company was not disputed. The evidence also proves that there was more than a mere executory contract to sell the steamship to the North Alaska Steamship Company,

because the sale was consummated by complete manual delivery of the ship to the purchaser, and she was permitted to leave the port of Seattle under the control of the purchaser in consideration of said contract, and that she earned money for the purchaser. Therefore the defendant held the legal title subject to the trust created by said contract, and, except as against other creditors and bona fide purchasers, the ship was effectually and legally hypothecated for the complainant's debt.

The evidence proves that the Garonne was surrendered to the defendant in good condition, and that she was then worth more than the amount of the complainant's debt over and above all other claims against her. The defendant was then in the same situation, practically, that it would have been if the mortgage had been executed and foreclosed and the ship sold to the defendant for the amount of the debts secured by the mortgage, and the manner in which she was disposed of by the defendant without notice to the complainant was incompatible with the good faith to which the defendant, as trustee for the complainant, became pledged by its agreement with Pusey. The evidence also proves that the release given by the defendant while it was the holder of the $10,000 note included the debt evidenced by that note, and discharged the North Alaska Steamship Company from its indebtedness to the complainant, to the extent of the power of a trustee, under the circumstances, and by discharging the steamship company in that manner and disposing of the security without the complainant's consent the defendant, by the principles of equity, must be held to have assumed an obligation to pay the note.

In the argument in behalf of the defendant, it was contended that the North Alaska Steamship Company should have been joined as a necessary party to the suit, and that because of a defect of parties the court cannot render a decree, other than a decree of dismissal. If it were true that the steamship company is a necessary party, the court would be obligated to dismiss the suit, notwithstanding the failure of the defendant to set forth this ground of objection to the bill of complaint, by demurrer, plea, or answer. The defendant, however, by the introduction of the release in evidence, has proved affirmatively that the steamship company is not a necessary nor a proper party. It has no interest to be affected by the litigation, because the release is an estoppel against any reclamation by the defendant against it.

I direct that a decree be entered in favor of the complainant for the amount of the principal and interest of the promissory note, and the amount specified in the note for attorney's fee.